**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LIBERTY ACCESS TECHNOLOGIES LICENSING LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>AVIGILON CORPORATION,<br><br>    Defendant. | Civil Action No. <u>2:25-cv-00745</u><br><br>**<u>JURY TRIAL DEMANDED</u>** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Liberty Access Technologies Licensing LLC ("<u>Liberty Access</u>" or "<u>Plaintiff</u>") files this Complaint for patent infringement against Defendant Avigilon Corporation ("<u>Avigilon</u>" or "<u>Defendant</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>") issued by the United States Patent and Trademark Office ("USPTO"):

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 9,373,205 | Access Control System And Method For Use By An Access Device | USPTO.ɢᴏᴠ,<br><u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9373205</u> |
| 10,657,747 | Access Control System And Method For Use By An Access Device | USPTO.ɢᴏᴠ,<br><u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10657747</u> |
| 11,443,579 | Access Control System And Method For Use By An Access Device | USPTO.ɢᴏᴠ,<br><u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11443579</u> |

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 11,217,053 | Access Control System and Method for Use by an Access Device | USPTO.GOV, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11217053 |
| 11,373,474 | Access Control System And Method For Use By An Access Device | USPTO.GOV, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11373474 |

2.     Liberty Access seeks injunctive relief and monetary damages.

## PARTIES

3.     Liberty Access is a limited liability company organized under the laws of the State of Texas, with a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701 (Travis County).

4.     Liberty Access is the exclusive licensee of the Asserted Patents with all rights to recover for all past, present, and future infringement, including past damages.

5.     Upon public information and belief, Avigilon Corporation is a corporation organized under the laws of Canada with its corporate headquarters located at 101-1001 W Broadway C/O PMB 378, Vancouver, British Columbia Canada - V6H4E4.

6.     Avigilon Corporation may be served through its registered agent for service, CT Corporation System, which is located at 1999 Bryan St. Suite 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

7.     Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.     This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained an established and regular places of business in this District and have committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

10.    In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

11.    Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

12.    Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

13.    Defendant maintains regular and established places of business in this District.

14.    Upon information and belief and based upon public information, Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including, but not

limited to, facilities at the following addresses: 4001 E Plano Pkwy, Plano, Texas 75074; and 1717 McKinney Avenue, Suite 1590, Dallas, Texas 75202.  *See, e.g.*, Avigilon, LINKEDIN.COM, https://www.linkedin.com/company/avigilon/about/ (last visited July 23, 2025).

15.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, Defendant has placed and continues to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to Texas residents and consumers.

16.     Upon information and belief, Defendant ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities, to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

17.     Defendant markets, sells, and delivers Accused Products in this district, and has committed acts of infringement in this District.

18.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products in an infringing manner.

19.     Defendant has committed acts of direct patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum

contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

20.      Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

21.      Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22.      Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.avigilon.com/, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

23.      Based upon public information, Defendant makes, uses, causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes, and instructs its subsidiaries, affiliates, and end users to use the hardware, software, and functionality that implement its Mobile Access features as a key, through marketed products and services, including, but not limited to: the Avigilon Access Control System and its "Mobile Credential" feature, and the Avigilon Standard Smart Reader and Alta Open Mobile Application, including its "Mobile Credential" feature, along with other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").  *See* **Figures 1–5** (below); *see also* **Exhibits A–D** (Evidence of Use Regarding Infringement of the Asserted Patents).



**Figure 1**

Source: AVIGILON ACCESS CONTROL SYSTEM, https://www.avigilon.com/access-control.



**Figure 2**

Source: AVIGILON ACCESS CONTROL SYSTEM, https://www.avigilon.com/access-control.



**Figure 3**

Source: AVIGILON STANDARD SMART READER, https://www.avigilon.com/access-control/standard-smart-reader.



**Figure 4**

Source: AVIGILON SMART READERS (DOOR LOCKS), https://docs.avigilon.com/bundle/avigilon-smart-readers-v2-datasheet/resource/avigilon-smart-readers-v2-datasheet.pdf.



**Figure 5**

<u>Source</u>: AVIGILON ALTA OPEN MOBILE APPLICATION,
https://play.google.com/store/apps/details?id=com.openpath.mobile.

24.     Based upon public information, Defendant, directly and/or through its agents and intermediaries, also operate, advertise, and/or control the locations throughout this District, including at least at the locations listed above, through which it and its agents, customers, and employees use, advertise, provide, and/or educate third parties about the Accused Products.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,373,205

25.     Liberty Access repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

26.     The USPTO duly issued U.S. Patent No. 9,373,205 (the "'205 patent") on June 21, 2016, after full and fair examination of Application No 14/603,434, which was filed on January 23, 2015. *See* '205 patent at 1.  A Reexamination Certificate was issued on February 25, 2022 after supplemental examination of application No. 96/000,367. *See id.* at 14–17.

27.     Liberty Access is the exclusive licensee of the '205 patent with all substantial rights, and interest in and to the '205 patent, including the sole and exclusive right to prosecute this action and enforce the '205 patent against infringers, and to collect damages for all relevant times.

28.     Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '205 patent.

29.     The claims of the '205 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that allow for secure access to control of a door lock based on information contained in a current reservation certificate.

30.     The written description of the '205 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art priority date. The '205 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

31.     Defendant has infringed one or more claims of the '205 patent by using, providing, supplying, or distributing the Accused Products.

32.     Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '205 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 9,373,205).

33.     For example, detailed in Exhibit A, the Accused Products provide an access device for use in an access control system, the access device comprising: a processor having control of a door lock; and a communication module connected to the processor, the processor is configured to receive a reservation certificate presented by a portable terminal through the communication

module; wherein, when a current reservation certificate that comprises an interval of a reservation is presented by the portable terminal, the processor is configured to compare the interval of the reservation of the current reservation certificate to a current time accessible to the processor, determine the current time is within the interval of the reservation, and activate the door lock to allow the portable terminal to unlock the door lock during the interval of the reservation.

34.     Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '205 patent by inducing others to directly infringe one or more claims of the '205 patent.  Defendant has induced and continues to induce its subsidiaries, parents, partners, affiliates, employees, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '205 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '205 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '205 patent. Defendant's inducement is ongoing.

35.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '205 patent.  Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '205 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '205 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '205 patent, including, for example, claim 1 of the '205 patent.  The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '205 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

36.    On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights).

37.    Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

38.    Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '205 patent was, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

39.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such

infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

40.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '205 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,657,747

41.    Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

42.    The USPTO duly issued U.S. Patent No. 10,657,747 (the "'747 patent") on May 19, 2020, after full and fair examination of Application No. 16/034,278, which was filed on July 12, 2018. *See* '747 patent at 1.

43.    Liberty Access is the exclusive licensee of the '747 patent with all substantial rights, and interest in and to the '747 patent, including the sole and exclusive right to prosecute this action and enforce the '747 patent against infringers, and to collect damages for all relevant times.

44.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '747 patent.

45.    The claims of the '747 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and

methods for secure access to control of a door lock based on information contained in a reservation certificate.

46.    The written description of the '747 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '747 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

47.    Defendant has infringed and continues to infringe one or more claims of the '747 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

48.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '747 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 10,657,747).

49.    For example, as detailed in Exhibit B, the Accused Products provide an access control system comprising an access device comprising a communication module connected to a processor having control of a door lock; a secure reservation interface to receive a reservation request from a first device for a reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of a location at the destination and an interval of the reservation; a reservation server, in communication with the reservation interface and a network, to receive the reservation request for the destination that includes a selected location at the destination and an interval of the reservation; issue a reservation certificate describing the interval

of the reservation based on the reservation request and the selected location; and 3) transmit, via the network, from the reservation server to a second device distinct from the first device, the reservation certificate and a communication setting corresponding to the access device, d) an application installed on the second device to receive the reservation certificate and the communication setting corresponding to the access device, wherein the application wirelessly transmits the reservation certificate to the access device using the communication setting upon receipt of a command to activate the door lock; and e) wherein the access device receives the reservation certificate from the application based on use by the application of the communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

50.     Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '747 patent by inducing others to directly infringe one or more claims of the '747 patent.  Defendant has induced and continues to induce its subsidiaries, parents, partners, affiliates, employees, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '747 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '747 patent, including, for example, claim 1 of the '747 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which

constitutes induced infringement with the knowledge of the '747 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '747 patent. Defendant's inducement is ongoing.

51.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '747 patent.  Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '747 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '747 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '747 patent, including, for example, claim 1 of the '747 patent.  The special features include, for example, the method recited in claim 1, including all the intermediary steps. The special features constitute a material part of the invention of one or more of the claims of the '747 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

52.    Defendant has had knowledge of the '747 patent at least as of the date when it was notified of the filing of this action.

53.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

54.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

55.     Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '747 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

56.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.     Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '747 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,443,579

58.     Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

59.     The USPTO duly issued U.S. Patent No. 11,443,579 (the "'579 patent") on September 13, 2022, after full and fair examination of Application No. 17/657,752, which was filed on April 2, 2022.  *See* '579 patent at 1.

60.     Liberty Access is the exclusive licensee of the '579 patent with all substantial rights, and interest in and to the '579 patent, including the sole and exclusive right to prosecute this action and enforce the '579 patent against infringers, and to collect damages for all relevant times.

61.     Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '579 patent.

62.     The claims of the '579 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

63.     The written description of the '579 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '579 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

64.     Defendant has infringed and continues to infringe one or more claims of the '579 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

65.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents at least claim 8 of the '579 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,443,579).

66.     For example, as detailed in Exhibit C, the Accused Products provide an access control system comprising an access control system comprising: an access control system comprising: an

access device comprising a communication module connected to a processor having control of a lock; an application on a portable terminal; and a server to provide a communication setting and a reservation certificate to the application, the communication setting corresponding to the access device, and the reservation certificate comprising an interval of a reservation, wherein the processor receives the reservation certificate from the application based on use by the application of the communications setting, and wherein the processor compares the interval of the reservation to a current time accessible to the processor to determine if the reservation certificate is current and wherein the processor activates the lock when the processor determines that the reservation certificate is current.

67.    Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '579 patent by inducing others to directly infringe one or more claims of the '579 patent.  Defendant has induced and continues to induce its subsidiaries, parents, partners, employees, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '579 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '579 patent, including, for example, claim 8 of the '579 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '579 patent and with the knowledge

that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '579 patent. Defendant's inducement is ongoing.

68.    Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '579 patent.  Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '579 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '579 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '579 patent, including, for example, claim 8.  The special features include, for example, the system recited in claim 8.  The special features constitute a material part of the invention of one or more of the claims of the '579 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

69.    Defendant has had knowledge of the '579 patent at least as of the date when it was notified of the filing of this action.

70.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

71.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

72.    Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '579 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

73.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

74.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '579 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## <u>COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,217,053</u>

75.    Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

76.    The USPTO duly issued U.S. Patent No. 11,217,053 (the "'053 patent") on January 4, 2022, after full and fair examination of Application No. 16/847,719, which was filed on April 14, 2020.  *See* '053 patent at 1.

77.    Liberty Access is the exclusive licensee of the '053 patent with all substantial rights, and interest in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers, and to collect damages for all relevant times.

78.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

79.    The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.    Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

80.    The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '053 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

81.    Defendant has infringed and continues to infringe one or more claims of the '053 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

82.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '053 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,217,053).

83.    For example, as detailed in Exhibit D, the Accused Products provide an access control system comprising: a) an access device comprising a short-range wireless communication module

connected to a processor having control of a door lock; b) a secure reservation interface to receive a reservation request for a reservation at a given destination, the reservation interface comprising one or more screens for receiving a selection of at least an interval of the reservation; c) a reservation server, in communication with the reservation interface and a network, to: receive the reservation request for the destination, the reservation request including at least the interval of the reservation; issue a reservation certificate comprising the interval of the reservation based on at least the reservation request; transmit, via the network, from the reservation server to a smartphone, at least the reservation certificate and a short-range wireless communication setting corresponding to the access device; d) a smartphone application installed on the smartphone to receive the reservation certificate and the communication setting corresponding to the access device, wherein the smartphone application comprises a transmission module that wirelessly transmits the reservation certificate to the access device using the short-range wireless communication setting when the smartphone on which the smartphone application is installed is within short-range wireless transmission distance of the access device; and e) wherein the access device receives the reservation certificate from the smartphone application based on use by the smartphone application of the short-range wireless communication setting, and the processor activates the door lock based on at least the receipt of the reservation certificate.

84.    Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '053 patent by inducing others to directly infringe one or more claims of the '053 patent.  Defendant has induced and continues to induce its subsidiaries, parents, partners, employees, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '053 patent by using the Accused

Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '053 patent, including, for example, claim 1 of the '053 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '053 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '053 patent. Defendant's inducement is ongoing.

85.    Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '053 patent.  Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '053 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '053 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '053 patent, including, for example, claim 1.  The special features include, for example, the method recited in claim 1, including all the intermediary steps.  The special features constitute a material part of the invention of one or more of the claims of the '053 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

86.    Defendant has had knowledge of the '053 patent at least as of the date when it was notified of the filing of this action.

87.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

88.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

89.    Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '053 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

90.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

91.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '053 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 11,373,474

92.    Liberty Access repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

93.    The USPTO duly issued U.S. Patent No. 11,373,474 (the "'474 patent") on June 28, 2022, after full and fair examination of Application No. 17/646,837, which was filed on January 3, 2022.  *See* '474 patent at 1.  A Reexamination Certificate was issued on May 13, 2024 after supplemental examination of application No. 90/015,231.  *See id.* at 16–19.

94.    Liberty Access is the exclusive licensee of the '474 patent with all substantial rights, and interest in and to the '474 patent, including the sole and exclusive right to prosecute this action and enforce the '474 patent against infringers, and to collect damages for all relevant times.

95.    Liberty Access or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '474 patent.

96.    The claims of the '474 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods secure access to control of a door lock based on information contained in a reservation certificate.

97.    The written description of the '474 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '474 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

98.    Defendant has infringed and continues to infringe one or more claims of the '474 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

99.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents at least claim 1 of the '474 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 11,373,474).

100.    Upon information and belief, the Accused Products meet each and every step of at least claim 1 of the '747 patent, either literally or under the doctrine of equivalents, as detailed in Exhibit E.

101.    For example, as detailed in Exhibit E, the Accused Products provide an access control system comprising a unique Bluetooth ID and a communication module connected to a processor having control of a door lock, an application on a portable terminal, a server to provide a communication setting to the application, the communication setting corresponding to the access device, and to further provide a reservation certificate to the application, the reservation certificate comprising an interval of a reservation, wherein the reservation certificate provided to the application includes the unique Bluetooth ID of the access device, and wherein the application uses the unique Bluetooth ID of the access device to identify when the access device is in proximity to the portable terminal and to communicate with the access device when it is identified as in proximity to the application, wherein the application compares the interval of the reservation to a current time accessible to the application to determine if the reservation certificate is current and wherein, the application provides the reservation certificate to the access device and activates the door lock by communicating with the access device via the communication setting when the

application determines that the reservation certificate is current, and wherein the reservation certificate is provided to the access device solely by the application.

102.    Since at least the time of receiving the original Complaint in this matter, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '474 patent by inducing others to directly infringe one or more claims of the '474 patent.  Defendant has induced and continues to induce its subsidiaries, parents, partners, employees, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '474 patent by using the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '474 patent, including, for example, claim 1 of the '474 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '474 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '474 patent. Defendant's inducement is ongoing.

103.    Since at least the time of receiving the original Complaint in this matter, Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '474 patent.  Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '474 patent by personnel, contractors,

customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '474 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '474 patent, including, for example, claim 1.  The special features include, for example, the method recited in claim 1, including all the intermediary steps.  The special features constitute a material part of the invention of one or more of the claims of the '474 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

104.    Defendant has had knowledge of the '474 patent at least as of the date when it was notified of the filing of this action.

105.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

106.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

107.    Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '474 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

108.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

109.    Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '474 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology.  The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

110.    Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

111.    WHEREFORE, Liberty Access requests that the Court find in its favor and against Defendant, and that the Court grant Liberty Access the following relief:

a.    Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c.    Judgment that Defendant account for and pay to Liberty Access all damages to and costs incurred by Liberty Access because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Liberty Access its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>July 25, 2025</u>                              Respectfully submitted,

                                                By: <u>*/s/ C. Matthew Rozier*</u>

                                                C. Matthew Rozier (CO 46854)
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                1001 Bannock Street
                                                Suite 241
                                                Denver, CO  802041
                                                Telephone: (404) 779-5305, (202) 316-1591
                                                Email: matt@rhmtrial.com

                                                Jonathan L. Hardt (TX 24039906) *
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                712 W. 14th Street, Suite A
                                                Austin, Texas 78701
                                                Telephone: (737) 295-0876
                                                Email: hardt@rhmtrial.com

                                                James F. McDonough, III (GA 117088) *
                                                **ROZIER HARDT MCDONOUGH PLLC**
                                                659 Auburn Avenue NE, Unit 254
                                                Atlanta, GA 30312
                                                Telephone (404) 564-1866
                                                Email: jim@rhmtrial.com

                                                **Attorneys for Plaintiff**
                                                ***LIBERTY ACCESS TECHNOLOGIES LICENSING LLC***

                                                *Admitted to the Eastern District of Texas

**<u>List of Exhibits</u>**

- **Exhibit A** – Evidence of Use Regarding Infringement of U.S. Patent No. 9,373,205

- **Exhibit B** – Evidence of Use Regarding Infringement of U.S. Patent No. 10,657,747

- **Exhibit C** – Evidence of Use Regarding Infringement of U.S. Patent No. 11,443,579

- **Exhibit D** – Evidence of Use Regarding Infringement of U.S. Patent No. 11,217,053

- **Exhibit E** – Evidence of Use Regarding Infringement of U.S. Patent No. 11,373,474

**List Of Supportive Links**

1. U.S. Patent No. 9,373,205, USPTO.GOV,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9373205

2. U.S. Patent No. 10,657,747, USPTO.GOV,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10657747

3. U.S. Patent No. 11,443,579, USPTO.GOV,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11443579

4. U.S. Patent No. 11,217,053, USPTO.GOV,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11217053

5. U.S. Patent No. 11,373,474, USPTO.GOV,
   https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11373474